IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Richard Manigault, ) | C/A No.  0:15-4647-JFA-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Albert Housey, *Lieutenant*; Ryan Grant, ) | |
| *Corporal*; Dustin Crosby, *Officer*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Richard Manigault, a self-represented state prisoner, filed this action against the named defendants pursuant to 42 U.S.C. § 1983.[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 64.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Manigault of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 66.) Manigault filed a response in opposition to the defendants' motion (ECF No. 70), and the defendants replied (ECF No. 76).[2] Having reviewed the parties' submissions and the applicable law, the court concludes that the defendants' motion should be granted in part and denied in part.

---

[1] By previous order issued by the Honorable Joseph F. Anderson, Jr., Senior United States District Judge, Defendants Gary Eichelberger, Valerie Jackson, and Levern Cohen were summarily dismissed from this matter. (ECF No. 27.)

[2] Manigault also filed a sur-reply. (ECF No. 78.) The Local Civil Rules make no provision for sur-replies. However, consideration of Manigault's sur-reply would not change the court's recommendation on the defendants' motion.



**BACKGROUND**

The following facts are either undisputed or are taken in the light most favorable to Manigault, to the extent they find support in the record. Manigault alleges that, on or about May 12, 2014, while housed at Ridgeland Correctional Institution, he shouted to Defendant Lieutenant Housey from inside his cell because the toilet within his cell had overflowed. (Compl., ECF No. 1 at 3.) When Housey did not respond to Manigault's shouts for help, Manigault became frustrated and "banged his fist on the door." (Id.) According to Manigault, Housey threatened to mace Manigault if he kicked the door again. (Id. at 3-4.) Manigault attempted to speak to Housey, and when Housey allegedly refused to acknowledge him, Manigault again hit the door in frustration. (Id.) Housey responded by unlocking and opening the door to Manigault's cell and administering approximately 9-10 grams of chemical munitions into Manigault's facial area. (Id.) According to Manigault, Manigault then pushed open the cell door, grabbed Housey, and pushed Housey to the floor. (Id.) Within seconds, Defendant Corporal Grant grabbed Manigault, placed him in a headlock, and forced him to the floor. (Id.) Defendant Officer Crosby also responded, grabbing Manigault's legs and holding them up "in a wheelbarrow position." (Id.)

According to Manigault, Housey then began punching him repeatedly in the face and head and continued to do so after Manigault was restrained by the two other officers and was obeying and lying face down on the floor. (Id.) Manigault also alleges that Grant told Housey to stop punching Manigault, as several of the punches were hitting Grant as well, after which Housey punched Manigault on the back of the head once more time before stating, "Don't you ever try me like that again." (Id. at 4-5.)



Manigault alleges that the defendants used excessive force against him in violation of the Eighth Amendment of the United States Constitution. Manigault also brings state law claims of assault and battery against Defendant Housey.³

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

---

³ To the extent Manigault is raising state law assault and battery claims against Defendants Grant and Crosby, it appears these defendants would enjoy immunity from these claims. See S.C. Code Ann. § 15-78-70(b); 28 U.S.C. § 1915(e)(2)(B)(iii); 3 S.C. Jurisprudence Assault and Battery §§ 39 & 44 (1991).



The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

B.     Defendants' Motion for Summary Judgment

**Eighth Amendment—Excessive Force**

The Eighth Amendment to the United States Constitution expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To proceed with his excessive force claim under the Eighth Amendment, Manigault must demonstrate: (1) objectively, the deprivation was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294 (1991); Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.' " Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Wilson, 501 U.S. at 298-300).



The "core judicial inquiry" in an excessive force claim under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. However, "[w]hen prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 9).

When analyzing the subjective element of excessive force claims, courts must determine if the defendant showed "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. 312, 322 (1986). To that end, they should consider factors such as (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. Id. at 321. Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." Id. at 321-22. The Supreme Court has recognized that prison officials work in an environment where there is an ever present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. Id. The deference owed to prison administrators extends



to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." Id. at 322.

As described above, Manigault alleges that the defendants used excessive force while restraining him during the May 12, 2014 incident.[4]  Specifically, Manigault alleges that Defendant Housey repeatedly punched him in the face and head after he was restrained, that Defendant Grant choked him while attempting to restrain him, and that Defendants Grant and Crosby "did not use [their] training skills nor did [they] act professionally nor when [they] restrained [Manigault]." (Compl., ECF No. 1 at 4-6.)  In support of their motion for summary judgment, the defendants have provided affidavit testimony and Manigault's medical records.

The defendants argue that the their use of force was appropriate given the serious threat posed by Manigault and the extremely dangerous situation created by his behavior.  (Defs.' Mem. Supp. Summ. J., ECF No. 64-1 at 7-9.)  Additionally, the defendants argue that Manigault's failure to seek medical attention on the date of the incident and the absence of any objective injuries show that the amount of force used on Manigault was reasonable and appropriate.  (Id. at 7.)  Manigault provides support for his response in opposition in the form of incident reports, medical records, inmate declarations, and requests to staff.

---

[4] Manigault does not appear to allege that Defendant Housey's use of chemical munitions constituted excessive force.  However, to the extent Manigault attempts to raise such a claim, the undisputed evidence in the record shows that this claim would fail as a matter of law.  See Bailey v. Turner, 736 F.2d 963, 969-70 (4th Cir. 1984) (holding that as long as the quantity of mace used is commensurate with the gravity of the occasion, its use does not violate the Constitution, that prison officials may use mace to compel the obedience of a recalcitrant prisoner, and that the Eighth Amendment afforded prison officials the discretion to use mace on inmates to compel them to abide by prison rules, even if they did not pose an immediate physical threat).



Applying the Whitley factors to the facts viewed in the light most favorable to Manigault, the court concludes that no reasonable jury could find that the amount of force used by Defendants Grant and Crosby was unconstitutionally excessive. Importantly, Manigault acknowledges that he pushed open the door to his cell, grabbed Lt. Housey, and pushed him down onto the floor. (Compl., ECF No. 1 at 4.) Manigault further acknowledges that immediately after Manigault exited his cell and was assaulting Lt. Housey, Grant "grabb[ed] plaintiff and place[d] him in a head-lock" in an attempt to force Manigault to the ground, and that Crosby responded by grabbing Manigault's legs and lifting them into the air. (Id.) Grant provides affidavit testimony in which he swears that he attempted to aid in restraining Manigault and that Manigault continued to struggle even after he was taken to the ground. (Grant Aff. ¶¶ 9-10; ECF No. 64-2 at 2.) Viewing the record in the light most favorable to Manigault, the force alleged by Manigault as to Defendants Grant and Crosby occurred during the struggle to restrain Manigault after Manigault exited his cell and was assaulting Lt. Housey. Manigault does not allege any injury as a result of Crosby's actions, but alleges that Grant's actions caused Manigault to have difficulty swallowing. (Compl., ECF No. 1 at 5.) Review of Manigault's medical records reveals that Manigault first complained of difficulty swallowing several weeks after the above described incident during a June 6, 2014 medical encounter, but that, at that time, Manigault appears to have attributed his swallowing problems to his previously diagnosed thyroid condition. (Med. R., ECF No. 85 at 20.) Several months later, in December 2014, Manigault reported that he has had a problem swallowing since the May 2014 incident. (Id., ECF No. 85 at 9.)

The undisputed evidence in the record shows, at the very least, that Manigault's initial unruly behavior and subsequent physical struggle with the defendants necessitated the force used by Defendants Grant and Crosby. Whitley, 475 U.S. at 321-22. Manigault's own admissions



demonstrate that he exited his cell without authorization and physically assaulted a corrections officer. Accordingly, Manigault indisputably presented a threat to the order of the institution and the safety of those officers and inmates inside it, necessitating the use of force. See id. at 321. Thus, even viewing the record in the light most favorable to Manigault, no reasonable jury could find that Defendants Grant and Crosby's perception of Manigault's recalcitrant behavior and the risk his behavior posed was unreasonable. See id. at 321-22. Accordingly, applying the Whitley factors and examining the totality of the undisputed circumstances, the court concludes that no reasonable jury could find that Defendant Grant and Crosby's use of force to restrain Manigault was not commensurate with the reasonably perceived threat posed by Manigault and was not applied in a good faith effort to maintain or restore discipline, but rather was used maliciously and sadistically to cause physical harm. See Wilkins, 559 U.S. at 37; see also Whitley, 475 U.S. at 321-22; Williams, 77 F.3d at 763.

Turning to Manigault's allegations as to Defendant Housey and applying the Whitley factors to the facts viewed in the light most favorable to Manigault, the court concludes that summary judgment must be denied, as a factual dispute exists that is material to the core inquiry. Manigault alleges in his verified Complaint that after he was restrained by Sergeant Grant and Officer Crosby and lying face down on the floor, Housey repeatedly punched him in the face and the back of his head. The defendants provide affidavit testimony in which Housey and Grant swear that Housey did not strike Manigault after he was restrained. (Housey Aff. ¶¶ 8-14, ECF No. 64-3 at 1-2; Grant Aff. ¶¶ 9-16, ECF No. 64-2 at 2.) Additionally, in response to Manigault's argument that the defendants are suppressing a videotape of the incident that supports his claims, the defendants state that the videotape no longer exists, but provide affidavit testimony from Warden Cohen, who viewed the



videotape when responding to Manigault's Step 1 grievance. Cohen avers that the videotape showed Manigault exiting his cell and striking Housey, but that it did not show Housey strike Manigault in the face or head. (Cohen Aff. ¶¶ 10-12, ECF No. 76-1 at 2.) Notably, Cohen does not describe what the videotape *did* depict with regard to the subsequent struggle, or even whether the videotape captured the specific events in dispute. When the record contains an *unchallenged* videotape of the events in question, the plaintiff's version of the facts is credited only to the extent it is not contradicted by the videotape. See Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008). However, on this disputed record—which does not contain the videotape of the incident—the court must view the facts presented in the light most favorable to Manigault. On this record, a reasonable jury could conclude that there was no need for the application of force at the time that Housey allegedly applied it. Because the facts viewed in the light most favorable to Manigault permit the conclusion that Housey's alleged use of force was unnecessary after Manigault had been restrained by two other correctional officers, the Whitley factor that considers the relationship between the need for force and the amount of force used favors Manigault.

Examining the extent of the threat posed by Manigault to the safety of the staff and other inmates as reasonably perceived by Housey at the time the force was applied also weighs in Manigault's favor when the disputed facts are viewed in the light most favorable to Manigault. Although Manigault indisputably presented a threat to the order of the institution and the safety of the officers and inmates inside it when he initially exited his cell and assaulted Housey, a reasonable jury could find that, if Housey used force after Manigault was restrained by Sergeant Grant and Officer Crosby, Housey's perception of the threat posed by Manigault was unreasonable.

As to the efforts taken to temper the severity of the force used, the defendants argue only that after Manigault exited his cell and assaulted Housey, Housey "was left with no choice but to respond with physical force." (Defs.' Mem. Supp. Summ. J., ECF No. 61-1 at 9.) As discussed above, Housey avers that he "did not strike Inmate Manigault after he was restrained with his hands behind his back." (Housey Aff. ¶ 12, ECF No. 64-3 at 2.) However, Manigault declares under penalty of perjury that Housey struck him after he was restrained and compliant, and viewing the disputed facts in the light most favorable to Manigault permits the conclusion that no amount of force was needed to force compliance from an inmate who was already complying and restrained. Accordingly, this factor under Whitley also weighs in Manigault's favor.

Examining the extent of injury actually inflicted, Manigault alleges that he suffered "pain to his brain" as a result of Housey's actions. (Compl., ECF No. 1 at 5.) The parties agree that Manigault was offered—but refused—medical treatment on the day of the incident. Manigault points to evidence that shows he requested medical attention for a headache and back pain the following day and that he claimed his pain was a result of the incident. (ECF No. 70-1 at 5.) However, the defendants argue that Manigault's medical records do not indicate that he exhibited any swelling or discoloration during a medical examination three days following the incident, which the defendants argue is inconsistent with Manigault's allegations that he was repeatedly struck in the face and head. (See Med. R., ECF No. 85 at 21-22.) Additionally, the defendants argue that, although Manigault complained of headaches in the months following the incident,[5] he attributed these headaches to a variety of causes. (Defs.' Mem. Supp. Summ. J, ECF No. 64-1 at 3-4.) As

---

[5] The defendants also note that, prior to the incident, Manigault complained of headaches to the medical department on two separate occasions in 2013. (Defs.' Mem. Supp. Summ. J., ECF No. 64-1 at 2.)



discussed in Wilkins, sustaining a "significant injury" is not a requirement for stating an excessive force claim and is but one factor to consider when examining whether the use of force was necessary. Wilkins, 559 U.S. at 37. Additionally, the objective component of an excessive force claim examines the nature of the force—specifically, whether it was nontrivial—rather than the severity of any injuries inflicted. Id. at 39. Importantly, the objective component can be met by "the pain itself, even if an inmate has no enduring injury." Williams, 77 F.3d at 762 (internal quotation omitted). Review of the medical records reveals that, in the twelve months following the incident, Manigault was seen for continuing headaches on approximately seventeen occasions. (See Med. R., ECF No. 85 at 6-22.) Accordingly, based on the record before the court, the court cannot say as a matter of law that the nature of the force allegedly used by Housey was nontrivial.

Accordingly, applying the Whitley factors and examining the totality of the circumstances in the light most favorable to Manigault, the court concludes a genuine issue of material fact exists, and therefore summary judgment is inappropriate as to Housey's alleged use of excessive force after Manigault was restrained.

## RECOMMENDATION

Taking the facts in the light most favorable to Manigault, he cannot establish a violation of the Eighth Amendment as a matter of law with regard to Defendants Grant and Crosby. Summary judgment should therefore be granted as to these defendants. However, a genuine issue of material fact exists regarding Manigault's claim that excessive force was employed by Defendant Housey once Manigault was ultimately restrained, so summary judgment is not appropriate as to that claim, or as to any supplemental state law claims Manigault asserts for assault and battery grounded on those alleged facts. Accordingly, the court recommends that the defendants' motion for summary

judgment be granted as to Defendants Grant and Crosby and denied as to Defendant Housey. (ECF No. 64.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 28, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).